UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/2/2022
```

-------------------------------------------------------------------X

ANGEL HERNANDEZ and ANA GARCIA,    :
                                   :
                    Plaintiffs,    :
                                   :         1:18-cv-6418-GHW
      -against-                    :
                                   :    MEMORANDUM OPINION
CITY OF NEW YORK, MANUEL SILES, P.O.   :        AND ORDER
Shield #844, OMAR HABIB, P.O. Shield #844,  :
and DIEGO BEEKMAN MUTUAL HOUSING,  :
                                   :
                    Defendants.    :

-------------------------------------------------------------------X

GREGORY H. WOODS, United States District Judge:

## I.    INTRODUCTION

On March 29, 2018, Plaintiffs Angel Hernandez and Ana Garcia were attacked by six individuals at their apartment complex. Officer Manuel Siles, who was stationed nearby along with Officer Omar Habib, observed the fight as it spilled out onto the sidewalk. The officers also received a radio report of the fight in progress. As the officers arrived at the scene, Hernandez punched a woman involved in the altercation, causing her to fall to the ground. Then Hernandez kicked her. The officers quickly intervened in the altercation, separated Hernandez from the other participants, and then arrested Hernandez.

Plaintiffs brought this action *pro se* against the City of New York and the two officers involved in the arrest (collectively, the "City Defendants"), and Diego Beekman Mutual Housing ("Diego Beekman"), which owns and operates the apartment building. Plaintiffs allege that the officers waited five to ten minutes before intervening in the fight, arrested Hernandez despite knowing that he was acting in self-defense, and acted with racial bias by only arresting Hernandez and not the other participants in the altercation because Hernandez is Dominican. The City Defendants and Diego Beekman both moved for summary judgment. There is no dispute that the

officers, who intervened in the altercation within seconds of arriving, had no duty to protect Plaintiffs from private violence and had probable cause to arrest Hernandez. Further, Plaintiffs' selective enforcement claim is supported only by conclusory allegations. Accordingly, the City Defendants' motion for summary judgment is granted. In addition, because there is no dispute that Diego Beekman is not a state actor, Diego Beekman's motion for summary judgment is granted.

## II.   BACKGROUND

### A. Factual Background[1]

On March 29, 2018, Plaintiffs Garcia and Hernandez were at their residence in an apartment building at 593 E. 141st Street in the Bronx. Dkt. No. 74, Ex. E ("Hernandez Dep.") at 12:15–17; Dkt. No. 74, Ex. F ("Garcia Dep.") at 4:13–15. The apartment building is owned and operated by Diego Beekman. Diego Beekman's Rule 56.1 Statement, Dkt. No. 74-1, ¶ 2. Diego Beekman employs private security guards and maintains security cameras around the apartment building. Affidavit of Luis Rivera ("Rivera Aff."), Dkt. No. 74-6, ¶¶ 1–2. Diego Beekman's security guards regularly report crimes to the police. *See* Dkt. No. 74, Ex. H ("Habib Dep.") at 133:13–22.

Plaintiffs allege that they were attacked by six individuals, three men and three women, without warning. Sec. Am. Compl. (the "SAC"), Dkt. No. 32, ¶ 4. At the time of the altercation, Officers Siles and Habib were working as officers within the 40th Precinct in the Bronx. City Defendants' Rule 56.1 Statement ("City 56.1"), Dkt. No. 78, ¶ 4. The officers were stationed in a police van down the street from the apartment building. *Id.* ¶ 5. Plaintiffs allege that Diego Beekman's building manager called the police as soon as the fight began. SAC ¶ 7. The officers received a radio report of the fight in progress and Officer Siles oversserved the altercation as it moved onto the sidewalk. Habib Dep. at 134:12–14; Dkt. No. 74, Ex. G ("Siles Dep.") at 156:12–

---

[1] The following facts are drawn from Defendants' Local Civil Rule 56.1 Statements and other submissions in connection with these motions and are undisputed or taken in the light most favorable to Plaintiff, unless otherwise noted.

16.  The following events were captured on video by one of Diego Beekman's security cameras. Declaration of Damian P. Gallagher ("Gallagher Decl."), Ex. G ("Security Video"); Rivera Aff. ¶¶ 2–4.

Upon observing the altercation and receiving the radio report, the officers responded by driving the police van toward the altercation.  City 56.1 ¶ 8.  During the altercation, Hernandez punched a woman, causing her to fall, and then kicked her.  *Id.* ¶ 9; Security Video at 9:14–16. Officer Habib witnessed Hernandez hit the woman.  Habib Dep. at 132:5–10, 168:9–16.  Although the Plaintiffs allege in the SAC that the officers "watched the fight for five-to-ten minutes," SAC ¶ 9, the security video definitively disproves that unsupported allegation—the officers intervened in the altercation almost immediately upon arriving at the scene.  Security Video at 9:19.  Officer Habib acted to separate Hernandez from the other participants in the fight.  *Id.*

Garcia alleges that she "sustained bruises to her face, head, chest, and feet" during the fight, and that she "begged the police offers not to arrest her husband," explaining that she and Hernandez were the ones who had been attacked.  SAC ¶ 15; Garcia Dep. 44:13–18, 45:4–13.  The officers then arrested Hernandez for disorderly conduct in violation of N.Y. Penal Law § 240.20(1). City 56.1 ¶¶ 13–14; Gallagher Decl., Ex. F.  The officers did not arrest any other individuals involved in the altercation.  Garcia filed a complaint at the 40th Precinct concerning the fight, but ultimately did not press charges against the other individuals involved in the altercation.  Gallagher Decl., Ex. E.  The charges against Hernandez were later dismissed.  SAC ¶ 19.

### B.  Procedural History

Plaintiffs commenced this action *pro se* on July 16, 2018, naming the City of New York and two unknown officers of the 40th Precinct as defendants.  Dkt. No. 2.  On December 16, 2018, the Court dismissed Plaintiffs' complaint for failure to state a claim and granted Plaintiffs leave to amend the complaint within sixty days.  Dkt. No. 6.  After Plaintiffs failed to file an amended

complaint within 60 days, the Court dismissed this case. Dkt. No. 7. On March 25, 2019, Plaintiffs submitted an amended complaint along with a letter explaining why they had missed the deadline. Dkt. Nos. 9–10. The Court construed Plaintiffs' letter as a Rule 60(b) motion for relief from a judgment or order. Dkt. No. 11. The Court granted the motion, vacated the order of dismissal, and reopened this action. *Id.* On November 17, 2019, Plaintiffs filed a second amended complaint, to add the identities of the John Doe police officers named in prior iterations of their complaint. Dkt. No. 32.

On April 27, 2021, Diego Beekman filed a motion for summary judgment. Dkt. No. 74. The City Defendants filed a motion for summary judgment on May 4, 2021. Dkt. Nos. 76–79. The Court granted Plaintiffs a one-month extension to file their opposition to Defendants' motions to dismiss. Dkt. No. 82. Plaintiffs filed a single response to both Defendants' Rule 56.1 statements. Dkt. No. 85. Defendants submitted their replies shortly thereafter. Dkt Nos. 88, 91–92.

## III.   LEGAL STANDARD

Defendants are entitled to summary judgment on a claim if they can "show[] that there is no genuine dispute as to any material fact and [they are] entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" (quoting former Fed. R. Civ. P. 56(c))). A genuine dispute exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," while a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

4

The movant bears the initial burden of demonstrating "the absence of a genuine issue of material fact," and, if satisfied, the burden then shifts to the non-movant to present "evidence sufficient to satisfy every element of the claim." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (citing *Celotex*, 477 U.S. at 323–24). To defeat a motion for summary judgment, the non-movant—in this case, Plaintiffs—"must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). "[M]ere speculation or conjecture as to the true nature of the facts" will not suffice. *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (quoting *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995)). A plaintiff "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, and "may not rely on conclusory allegations or unsubstantiated speculation," *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (quoting *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998)).

In determining whether there exists a genuine dispute as to a material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)). The Court's job is not to "weigh the evidence or resolve issues of fact." *Lucente v. IBM Corp.*, 310 F.3d 243, 254 (2d Cir. 2002); *see also Hayes v. N.Y.C. Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996) ("In applying th[e] [summary judgment] standard, the court should not weigh evidence or assess the credibility of witnesses."). "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." *Jeffreys v. City of New York*, 426 F.3d 549, 553–54 (2d Cir. 2005) (quoting *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996)). "[T]he judge must ask . . . not whether . . . the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Id.* at 553 (quoting

*Anderson*, 477 U.S. at 252); *see also Battino v. Cornelia Fifth Ave., LLC*, 861 F. Supp. 2d 392, 400 (S.D.N.Y. 2012) ("To avoid summary judgment, all that is required of the non-moving party is a showing of sufficient evidence supporting the claimed factual dispute as to require a . . . jury's resolution of the parties' differing versions of the truth." (citing *Kessler v. Westchester Cnty. Dep't of Soc. Servs.*, 461 F.3d 199, 206 (2d Cir. 2006))).

Where, as here, the party opposing summary judgment is proceeding *pro se*, the Court must construe that party's submissions "liberally and interpret them to raise the strongest arguments that they suggest." *Corcoran v. N.Y. Power Auth.*, 202 F.3d 530, 536 (2d Cir. 1999) (internal quotation marks and citation omitted).  "It is well established that a court is ordinarily obligated to afford a special solicitude to pro se litigants," *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010), "particularly where motions for summary judgment are concerned," *Jackson v. Fed. Express*, 766 F.3d 189, 195 (2d Cir. 2014); *accord Harris v. Miller*, 818 F.3d 49, 57 (2d Cir. 2016).  Proceeding *pro se*, however, "does not . . . relieve [a pro se party opposing summary judgment] from the usual requirements of" opposing such a motion. *Fitzpatrick v. N.Y. Cornell Hosp.*, No. 00-cv-8594, 2003 WL 102853, at *5 (S.D.N.Y. Jan. 9, 2003).

As was done in this case, "[i]f the moving party seeks summary judgment against a *pro se* litigant, the moving party is also required to notify the *pro se* litigant of the requirements of Rule 56 and Local Civil Rule 56.1." *Wali v. One Source Co.*, 678 F. Supp. 2d 170, 178 (S.D.N.Y. 2009); *see* Notice to Pro Se Litigant Who Opposes a Motion for Summary Judgment Pursuant to Local Rule 56.2, Dkt. No. 78-1.  "*Pro se* litigants are then not excused from meeting the requirements of Local Rule 56.1." *Id.* (citing *Vt. Teddy Bear Co. v. 1–800–BEARGRAM Co.*, 373 F.3d 241, 246 (2d Cir. 2004)).

Here, Plaintiffs filed a single, two-page response to both Defendants' Rule 56.1 statements. Plaintiffs' response does not comply with Local Rule 56.1(b), which requires that "[t]he papers

opposing a motion for summary judgment shall include a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried." Local Civ. R. 56.1(b). Plaintiffs response also lacks citations to the evidence. *See id.* 56.1(d) (requiring that each statement of fact "be followed by citation to evidence").

"Rule 56 does not allow district courts to automatically grant summary judgment on a claim simply because the summary judgment motion, or relevant part, is unopposed." *Jackson*, 766 F.3d at 194. When deciding an unopposed motion for summary judgment, the district court need not "robotically replicate the defendant-movant's statement of undisputed facts and references to the record." *Id.* at 197. In such a circumstance, all the court is required to do is to "examine the movant's statement of undisputed facts and the proffered record support and determine whether the movant is entitled to summary judgment." *Id.*; *Vt. Teddy Bear Co.*, 373 F.3d at 244 ("[I]n determining whether the moving party has met this burden of showing the absence of a genuine issue for trial, the district court may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56.1 statement. It must be satisfied that the citation to evidence in the record supports the assertion."). "[W]here a *pro se* plaintiff fails to submit a proper Rule 56.1 statement in opposition to a summary judgment motion, the Court retains some discretion to consider the substance of the plaintiff's arguments, where actually supported by evidentiary submissions." *Wali*, 678 F. Supp. 2d at 178 (citing *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001)). In light of Plaintiffs' *pro se* status, the Court has independently reviewed the complete record to attempt to substantiate Plaintiffs' assertions but has been unable to find any evidence supporting those assertions.

## IV.   DISCUSSION

### A.  Federal Claims Against Diego Beekman

The SAC can be construed as raising claims against Diego Beekman for violations of Plaintiffs' constitutional rights under 42 U.S.C. § 1983.  Diego Beekman is entitled to summary judgement on Plaintiffs' § 1983 claims because it is not a state actor.

"A plaintiff pressing a claim of violation of his constitutional rights under § 1983 is . . . required to show state action." *Tancredi v. Metro. Life Ins. Co.*, 316 F.3d 308, 312 (2d Cir. 2003) (citing *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982)).  "Conduct that is formally 'private' may become so entwined with governmental policies or so impregnated with a governmental character that it can be regarded as governmental action." *Fabrikant v. French*, 691 F.3d 193, 206 (2d Cir. 2012) (quoting *Rendell-Baker*, 457 U.S. at 847).  "[T]he actions of a nominally private entity are attributable to the state when:  (1) the entity acts pursuant to the 'coercive power' of the state or is 'controlled' by the state ('the compulsion test'); (2) when the state provides 'significant encouragement' to the entity, the entity is a 'willful participant in joint activity with the [s]tate,' or the entity's functions are 'entwined' with state policies ('the joint action test' or 'close nexus test'); or (3) when the entity 'has been delegated a public function by the [s]tate,' ('the public function test')." *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 296 (2001)).

Diego Beekman's actions are not attributable to the state.  Diego Beekman is a private company who employs private security to monitor its property and report crimes to the police.  Rivera Aff. ¶¶ 1–2; Habib Dep. at 133:13–22.  The only connection between Diego Beekman and the police is that a Diego Beekman employee called the police to report the fight in progress.  Calling the police to report a crime is insufficient, standing alone, to establish state action.

First, "[u]nder the state compulsion test, 'a State normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State.'" *Doe v. Rosenberg*, 996 F. Supp. 343, 348–49 (S.D.N.Y. 1998) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)), *aff'd*, 166 F.3d 507 (2d Cir. 1999).  There is nothing in the record to support the conclusion that Diego Beekman acted pursuant to the coercive power of the state or was controlled by the state.  Diego Beekman called the police on its own accord.

"As to a showing of joint activity, the summoning of police officers or the provision of information to police officers, even if that information is false or results in the officers taking affirmative action, is not sufficient to constitute joint action with state actors for purposes of Section 1983." *Young v. Suffolk Cnty.*, 922 F. Supp. 2d 368, 385 (E.D.N.Y. 2013) (collecting cases). "Similarly, if a police officer's actions are due to the officer's own initiative, rather than the directive of a private party, the private party will not be deemed a state actor." *Id.* at 386 (collecting cases). Consequently, the fact that Diego Beekman reported the altercation to the police is insufficient to constitute joint activity.

Finally, under the public function test, "the required nexus may be present if the private entity has exercised powers that are 'traditionally the exclusive prerogative of the State.'" *Blum*, 457 U.S. at 1005 (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 353 (1974)).  "The act of calling the police itself is not a power reserved exclusively to the state.  If that were the case, every good Samaritan who dialed 9-1-1 could be deemed a state actor." *Mejia v. Robinson*, No. 1:16-CV-9706, 2018 WL 3821625, at *7 (S.D.N.Y. Aug. 10, 2018).  Absent any facts that Diego Beekman exercised powers beyond calling the police, there is no genuine dispute of material fact that Diego Beekman's actions fail the public function test.  Accordingly, Diego Beekman's motion for summary judgment with respect to Plaintiffs' § 1983 claims is granted.

### B. Federal Claims Against the State Defendants

#### a. False Arrest

The City Defendants' motion for summary judgment on Plaintiffs' false arrest claim under § 1983 is granted.  In analyzing claims for false arrest brought under § 1983, courts in this circuit "generally look[ ] to the law of the state in which the arrest occurred." *Russo v. City of Bridgeport*, 479 F.3d 196, 203 (2d Cir. 2007) (quoting *Davis v. Rodriguez,* 364 F.3d 424, 433 (2d Cir. 2004)).  "A section 1983 claim for false arrest is substantially the same as a claim for false arrest under New York law." *Simpson v. City of New York*, 793 F.3d 259, 265 (2d Cir. 2015) (quoting *Jenkins v. City of New York*, 478 F.3d 76, 84 (2d Cir. 2007)).  To state a claim for false arrest under New York law, a plaintiff must show that:  "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement[,] and (4) the confinement was not otherwise privileged." *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995) (first alteration in original) (quoting *Broughton v. State*, 335 N.E.2d 310, 314 (N.Y. 1975)).

"The existence of probable cause to arrest . . . is a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983." *Gonzalez v. City of Schenectady*, 728 F.3d 149, 155 (2d Cir. 2013) (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)). "[P]robable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested *has committed or is committing a crime*." *Id.* (quoting *Weyant*, 101 F.3d at 852).  The test for probable cause is an objective one and "depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Zellner v. Summerlin*, 494 F.3d 344, 369 (2d Cir. 2007) (quoting *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004)).  "[W]hether or not probable cause existed may be determinable as a matter of law if there is

no dispute as to the pertinent events and the knowledge of the [arresting] officers." *Weyant*, 101 F.3d at 852.

Further, "an arresting officer is entitled to qualified immunity on claims of false arrest . . . if either:  (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Carthew v. Cnty. of Suffolk*, 709 F. Supp. 2d 188, 203 (E.D.N.Y. 2010) (citing *Walczyk v. Rio*, 496 F.3d 139, 163 (2d Cir. 2007)); *see also Simpson v. City of New York*, 793 F.3d 259, 268 (2d Cir. 2015) (stating that an officer need only have "arguable probable cause," which exists if either it was objectively reasonable to believe that probable cause existed or if officers of reasonable competence could disagree on whether probable cause existed); *Posr v. Court Officer Shield #207*, 180 F.3d 409, 416 (2d Cir. 1999)).  "This forgiving standard protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Provost v. City of Newburgh*, 262 F.3d 146, 160 (2d Cir. 2001) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).  Courts may deny motions for summary judgment on qualified immunity grounds only where an officer's judgment was "so flawed that no reasonable officer would have made a similar choice." *Id.* (quoting *Lennon v. Miller*, 66 F.3d 416, 425 (2d Cir. 1995)).

There is no genuine dispute of material fact that Officers Siles and Habib had probable cause to arrest Hernandez.  The security video shows Hernandez punching a woman and then kicking her while she was on the ground.  Security Video 9:14–16.  Officer Habib witnessed Hernandez hit the woman.  Habib Dep. at 132:5–10, 168:9–16.  These facts establish probable cause for Hernandez's arrest for disorderly conduct.  *See* N.Y. Penal Law § 240.20(1) ("A person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof:  . . .  He engages in fighting or in violent, tumultuous or threatening behavior."); *see also Ganek v. Leibowitz*, 874 F.3d 73, 83 (2d Cir. 2017)( "[P]robable cause demands

more than a 'mere suspicion' of wrongdoing, but when, as here, a person's conduct satisfies the *actus reus* of a crime, we have moved well beyond mere suspicion." (citation omitted) (quoting *Mallory v. United States*, 354 U.S. 449, 454 (1957)).  In addition, these facts support probable cause for other offenses, including assault in the third degree, N.Y. Penal Law § 120.00(1) ("A person is guilty of assault in the third degree when: . . . With intent to cause physical injury to another person, he causes such injury to such person or to a third person."), and harassment in the second degree, N.Y. Penal Law § 240.26(1) ("A person is guilty of harassment in the second degree when, with intent to harass, annoy or alarm another person: . . . He or she strikes, shoves, kicks or otherwise subjects such other person to physical contact, or attempts or threatens to do the same.").  *See Jaegly v. Couch*, 439 F.3d 149, 154 (2d Cir. 2006) ("[A] claim for false arrest turns only on whether probable cause existed to arrest a defendant[;] . . . it is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest.").

Plaintiffs argue that "there was no probable cause to arrest Mr. Hernandez because if probable cause had been properly applied to the situation, the officers would have had probable cause to arrest the other participants in the physical altercation."  Pls.' Response to Defs.' Rule 56.1 Statements ("Pls.' Response"), Dkt. No. 74, ¶ 1.  However, whether the officers had probable cause to arrest the other participants has no bearing on whether the officers had probable cause to arrest Hernandez.  *See Daniels v. City of New York*, No. 03-cv-0809, 2003 WL 22510379, at *3 (S.D.N.Y. Nov. 5, 2003) ("To the extent that the officers encountered two people who each appeared credible and who each claimed to be the victim of assault by the other, the police had probable cause to arrest either [party] or both.").

In addition, interpreting Plaintiffs' submissions to raise the strongest argument they suggest, Plaintiffs contend that the officers did not have probable cause to arrest Hernandez because the

officers knew that Hernandez was acting in self-defense.  Garcia, who was visibly injured from the altercation, asserts that she asked one of the officers why he was arresting Hernandez, and told him that she and Hernandez were the ones who were attacked.  Garcia Dep. 44:13–18, 45:4–13; SAC ¶ 15.

"[U]nder some circumstances, a police officer's awareness of the facts supporting a defense can eliminate probable cause." *Jocks v. Tavernier*, 316 F.3d 128, 135 (2d Cir. 2003).  However, "an officer's failure to investigate an arrestee's protestations of innocence generally does not vitiate probable cause." *Panetta v. Crowley*, 460 F.3d 388, 395–96 (2d Cir. 2006); *see also United States v. Fama*, 758 F.2d 834, 838 (2d Cir. 1985) ("The fact that an innocent explanation may be consistent with the facts alleged, however, does not negate probable cause.").  Although an officer cannot "deliberately disregard facts known to him which establish justification," such as acting in self-defense, officers are not required "to investigate exculpatory defenses offered by the person being arrested or to assess the credibility of unverified claims of justification before making an arrest." *Jocks*, 316 F.3d at 135–36.  "Once officers possess facts sufficient to establish probable cause, they are neither required nor allowed to sit as prosecutor, judge or jury.  Their function is to apprehend those suspected of wrongdoing, and not to finally determine guilt through a weighing of the evidence." *Krause v. Bennett*, 887 F.2d 362, 372 (2d Cir. 1989).

Considering the facts available to the officers at the time of the arrest, the officers had probable cause to arrest Hernandez notwithstanding Garcia's unverified claim that Hernandez was acting in self-defense.  The officers were not required to investigate, or assess the credibility of, Garcia's claim.  Instead, given the officers' personal observation of Hernandez's physical conduct in the altercation, the officers had sufficient facts to establish probable cause to arrest him for disorderly conduct.  The officers' decision to not credit Garcia's assertions does not constitute a "disregard for exculpatory evidence sufficient to eliminate probable cause." *See Panetta*, 460 F.3d

388, 398 (2d Cir. 2006).  Accordingly, the City Defendants are granted summary judgment on Plaintiffs' false arrest claim.

### b.  Failure to Intervene

Next, the Court construes the SAC as raising a claim under § 1983 for violation of Plaintiffs' rights to substantive due process for the officers' alleged failure to intervene to protect Plaintiffs from violence during the altercation.  "Substantive due process protects against government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense, but not against government action that is incorrect or ill advised." *Cunney v. Bd. of Trs. of Vill. of Grand View*, 660 F.3d 612, 626 (2d Cir. 2011) (quoting *Kaluczky v. City of White Plains*, 57 F.3d 202, 211 (2d Cir. 1995)). "[N]othing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989).  The purpose of the Due Process clause is to "protect the people from the State, not to ensure that the State protect[s] them from each other."  *Id.* at 196. "As a general matter, . . . a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause."  *Id.* at 197.  As an exception to this general rule, the Second Circuit has "recognized two 'separate and distinct theories of liability' under the substantive component of the Due Process Clause:  'special relationship' liability and 'state-created-danger' liability."  *Benzman v. Whitman*, 523 F.3d 119, 127 (2d Cir. 2008) (quoting *Pena v. DePrisco*, 432 F.3d 98, 109 (2d Cir. 2005)).  Both theories of liability ate applied with "considerable stringency."  *Id.*

The special relationship exception does not apply because Plaintiffs were not in custody during the altercation.  "The special relationship exception grows from the *DeShaney* Court's observation that 'in certain limited circumstances the Constitution imposes upon the State affirmative duties of care and protection with respect to particular individuals.'"  *Matican v. City of New York*, 524 F.3d 151, 155 (2d Cir. 2008) (quoting *DeShaney*, 489 U.S. at 198).  Such circumstances

arise "when the State takes a person into its custody and holds him there against his will," which creates "a corresponding duty to assume some responsibility for his safety and general well-being." *DeShaney*, 489 U.S. at 199–200.  The Second Circuit has "focused on involuntary custody as the linchpin of any special relationship exception." *Matican*, 524 F.3d at 156 (collecting cases).  That is because "[t]he affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf." *DeShaney*, 489 U.S. at 200.  Here, Plaintiffs' failure to intervene claim is premised on the officers' alleged failure to intervene during the altercation.  However, Garcia was never placed in custody, and Hernandez was only placed in custody after the fight was broken up by the police.  Any affirmative duty to protect Hernandez did not arise until Hernandez was taken into custody.

The undisputed facts also fail to support a claim for state-created danger.  Under the "state-created danger" theory of liability, a State can "infringe a victim's due process rights when its officers assist in creating or increasing the danger that the victim faced at the hands of a third party." *Matican*, 524 F.3d at 157.  "Liability under this theory turns on whether the state conduct contributing to the victim's injury was 'affirmative,' which can give rise to liability, or 'passive,' which cannot give rise to liability." *Golian*, 282 F. Supp. 3d at 730 (quoting *Matican*, 524 F.3d at 157).  "The affirmative conduct of a government official may give rise to an actionable due process violation if it communicates, explicitly or implicitly, official sanction of private violence." *Okin v. Vill. of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 429 (2d Cir. 2009).  Additionally, "repeated, sustained inaction by government officials, in the face of potential acts of violence, might constitute 'prior assurances' rising to the level of an affirmative condoning of private violence, even if there is no explicit approval or encouragement." *Id.* at 428. (citation omitted) (quoting *Dwares v. City of New York*, 985 F.2d 94, 99 (2d Cir. 1993)).  However, "[i]t is not enough to allege that a government actor failed to

protect an individual from a known danger of bodily harm or failed to warn the individual of that danger." *Lombardi v. Whitman*, 485 F.3d 73, 79 (2d Cir. 2007). "A failure to interfere when misconduct takes place, and no more, is not sufficient to amount to a state *created* danger." *Pena*, 432 F.3d at 110.

In the SAC, Plaintiffs allege that the officers waited five to ten minutes to break up the altercation after arriving to the scene. No facts support this allegation. The evidence establishes that upon observing the altercation and receiving a radio report of a fight in progress, the officers promptly drove to the scene and intervened within seconds of their arrival, separating Hernandez from the altercation. Further, even if Plaintiffs' allegation was true, a failure by the officers to intervene to protect Plaintiffs from violence during the altercation, without more, does not amount to a state created danger. Because there is no evidence to establish that the officers affirmatively created or enhanced the danger of private violence, the City Defendants are entitled to summary judgment on Plaintiffs' failure to intervene claim.

### c. Selective Enforcement

The City Defendants are also entitled to summary judgment on Plaintiffs' selective enforcement claim. To prevail on a selective enforcement claim under the Equal Protection Clause, Plaintiffs must show "(1) that they were treated differently from other similarly situated individuals, and (2) that such differential treatment was based on 'impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001) (internal quotation marks omitted) (quoting *LaTrieste Rest. & Cabaret Inc. v. Vill. of Port Chester*, 40 F.3d 587, 590 (2d Cir. 1994)). "Use of an impermissible consideration (such as race) must have been intentional, not merely negligent." *Brisbane v. Milano*, 443 F. App'x 593, 594 (2d Cir. 2011) (summary order) (citing *Patterson v. County of Oneida*, 375 F.3d 206, 226–27 (2d Cir. 2004)); *see also Phillips v.*

*Girdich*, 408 F.3d 124, 129 (2d Cir. 2005) ("To prove a violation of the Equal Protection Clause . . . a plaintiff must demonstrate that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination.").

There is no genuine dispute of material fact as to whether the officers intentionally acted with impermissible motive when they arrested Hernandez.  Plaintiffs argue that the officers showed racial bias by arresting Hernandez, who is Dominican, but not arresting any of the other participants in the altercation, who are from Puerto Rico or of Puerto Rican descent.  *See* SAC ¶ 17; Pls.' Response at ¶ 3.  Yet, outside of Plaintiffs' conclusory allegation that the officers were motivated by race, there are no facts in the record to support that the officers were aware of Hernandez's Dominican roots, or that they distinguished his background from that of the other participants in the fight.  Nor are there facts that support the conclusion that Officers Siles and Habib intentionally singled out Hernandez for arrest because of his race.  The Plaintiffs' unsupported speculation, without more, is insufficient to establish a genuine dispute of material fact.  Further, Plaintiffs allege that the officers "engage in a pattern and practice of discriminatory conduct against those of Dominican heritage," and allege at least two other instances in which officers from the 40th Precinct "failed to intervene to help people of Dominican descent."  SAC ¶¶ 20–21.  Again, Plaintiffs fail to offer any evidence to support the allegations contained in the SAC.  Accordingly, Defendants are entitled to summary judgment on Plaintiffs' selective enforcement claim.  *See Lisa's Party City, Inc. v. Town of Henrietta*, 185 F.3d 12, 17 (2d Cir. 1999) ("[T]he appellant's assertion that the Town enforced the ordinance against it with an impermissible motivation is sheer 'conjecture and speculation' that is insufficient to withstand the Town's motion for summary judgment.").

### d.  Municipal Liability

"To hold a city liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements:  (1) an official policy or custom that (2)

causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007) (quoting *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983)); *see also Monell v. Department of Social Services*, 436 U.S. 658, 690–91 (1978). Accordingly, "a municipality cannot be made liable [under § 1983] by application of the doctrine of *respondeat superior*," *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986), but rather the plaintiff must "demonstrate that, through its deliberate conduct, the municipality was the moving force behind the alleged injury," *Roe v. City of Waterbury*, 542 F.3d 31, 37 (2d Cir. 2008) (internal quotation marks omitted). An underlying constitutional violation is a required predicate for municipal liability. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).

As discussed above, Plaintiffs have not demonstrated a genuine dispute of material fact that their constitutional rights were violated. Because the Court has found each of Plaintiffs' § 1983 claims unavailing, it cannot identify an independent constitutional violation to support Plaintiffs' municipal liability claim. *See Ferguson v. Cai*, No. 11-cv-6181, 2012 WL 2865474, at *6 (S.D.N.Y. July 12, 2012) ("Because the Court has concluded that Ferguson's constitutional rights have not been violated, his claim of municipal liability pursuant to *Monell* is, *a fortiori*, also meritless."). Accordingly, Defendants' motion for summary judgment on Plaintiffs' claim against the City of New York is granted.

### C. Supplemental Jurisdiction

The Court declines to exercise supplemental jurisdiction over any state law claims that the SAC could be read to raise. The Court has discretion to hear such claims pursuant to 28 U.S.C. § 1367(a), which states that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." However, under 28 U.S.C.

§ 1367(c)(3), the exercise of supplemental jurisdiction over a party's remaining state law claims is within the Court's discretion if it has "dismissed all claims over which it has original jurisdiction." The Second Circuit counsels against exercising supplemental jurisdiction in this circumstance: "'[I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.'" *First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 183 (2d Cir. 2004) (quoting *Castellano v. Bd. of Trs.*, 937 F.2d 752, 758 (2d Cir. 1991)).

Because the Court has dismissed all of Plaintiffs' claims based on a federal question under 28 U.S.C. § 1331 and there is no other basis for federal jurisdiction over this case, the Court declines to exercise its supplemental jurisdiction over any state law claims that the SAC may be construed to assert. *See* 28 U.S.C. § 1367(c)(3).

## V.   CONCLUSION

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

For the foregoing reasons, Defendants' motions for summary judgment are GRANTED. The Clerk of Court is directed to mail a copy of this order to Plaintiffs, to terminate all pending motions, to enter judgment in favor of Defendants, and to close this case.

SO ORDERED.

Dated: February 2, 2022
New York, New York

_____
GREGORY H. WOODS
United States District Judge